UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


SAMANTHA ELSON,

    **Plaintiff,**

                                     Civil Action 2:15-cv-2500
                                     Magistrate Judge Elizabeth P. Deavers

**WAL-MART STORES, INC.,**

    **Defendant.**

## OPINION AND ORDER

Plaintiff, Samantha Elson, who injured her knee when she fell while shopping, brings this state-law negligence action against Defendant, Wal-Mart Stores, Inc. The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332. This matter is before the Court for consideration of Defendant's Motion for Summary Judgment (ECF No. 20), Plaintiff's Memorandum in Opposition (ECF No. 34), and Defendant's Reply (ECF No. 36). For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED**.

**I.**

On June 7, 2014, Plaintiff and her mother, Frankie Elson, went shopping at Defendant's Wal-Mart store located in Grove City, Ohio. Upon their arrival, Plaintiff went to the restroom before looking for her mother. At her deposition, Plaintiff's mother testified that she had been in the produce aisle for "about three minutes" when Plaintiff arrived and fell. (F. Elson Dep. 13, ECF No. 19-2 at 4.) Consistently, Plaintiff testified that upon arriving to the produce department, she "walked right up to her [mom], and that's when [she] fell." (S. Elson Dep. 26, ECF No. 19-1 at 8.)

More specifically, Plaintiff testified that as she walked up to her mom, she slipped and fell on a patch of dark-colored berries, which were on the floor "next to [a] black rug." (*Id*. at 27-28.) She described the floor as "[a] darker gray color, like a marble." (*Id*. at 30.) When asked whether it was brown cement, Plaintiff said that "[i]t could be." (*Id*.) Plaintiff stated that she slipped on "at least three" berries, but that she did not know if they were whole or smooshed when she fell. (*Id*.) Plaintiff represented that she first saw the berries "all over [her] pant leg . . . [and] foot" after she fell. (*Id*. at 32.) At that point, she looked down and saw the berries. When asked whether she would have seen the berries if she had been looking down instead of looking for her mom, Plaintiff stated, "[n]ot with how dark they were compared to [the] rug." (*Id*.) She further explained that the floor "was dark, and then the rug was dark and [the berries] were dark." (*Id*. at 33.)

Plaintiff's mother testified that she had just walked through that area before Plaintiff arrived and that she did not see the berries on the floor. She stated that Plaintiff slipped and fell as she approached her. Plaintiff's mother represented that she first noticed the berries after her daughter fell, when she looked to see what had caused her to slip. She stated that she saw multiple blackberries on the rug and on the brown cement adjacent to the rug. Plaintiff's mother speculated that if she had been looking down, she would not have seen the berries because they "pretty much matched the carpet," adding that she "had walked through the area" and had not seen them. (F. Elson Dep. 19-20, ECF No. 19-2 at 6.)

Plaintiff testified that "[i]t seemed relatively slow" at the store when the incident happened. (S. Elson Dep. 26, ECF No. 19-1 at 8.) When asked how the berries came to be on the floor, Plaintiff responded "I have no idea . . . I can only speculate." (*Id*. at 34.) Plaintiff said she was not aware of how long the berries had been on the floor and acknowledged that there

was no indication that Wal-Mart employees knew about the berries. Plaintiff thought that the squish marks on the floor reflected in the photo reflected where she stepped on the berries, but speculated some of them could be from someone else.

Plaintiff's mother testified that it was a "busy day at the store." (F. Elson Dep. 10, ECF No. 19-2 at 4.) She believed that the "squish marks" on the carpet were not from her daughter but that the ones next to the carpet "were probably hers." (*Id.* at 22.) Like Plaintiff, her mother also indicated that she was not aware of how long the berries were on the floor or whether Wal-Mart employees were aware they were on the floor. She reiterated that she had only been in the produce department for about three minutes.

After leaving Wal-Mart, Plaintiff's mother drove Plaintiff to the emergency room where she received treatment for a knee injury. Plaintiff subsequently underwent physical therapy to treat her knee injury. On June 3, 2015, Plaintiff filed the instant action in state court, asserting a state-law negligence claim and seeking compensatory damages. (ECF No. 2.) Defendant removed the action to this Court on July 1, 2015, based upon diversity jurisdiction. (ECF NO. 1.)

In the subject Motion for Summary Judgment (ECF No. 20), Defendant first asserts that the berries on the floor were an open and obvious condition such that it did not have a duty to warn or protect Plaitniff from the hazard the berries created. Defendant alternatively posits that even if it owed a duty, it did not breach its duty because it neither created the hazard nor had actual or constructive notice of the hazard. In her Memorandum in Opposition (ECF No. 34), Plaintiff maintains that genuine issues of fact exist regarding both whether the hazard created by the blackberries was open and obvious and also whether Defendant had actual or constructive notice of the hazard.

## II.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). "[On] Summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

Once the moving party meets its initial burden, the burden switches to the nonmoving party, who must designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The nonmoving party must, however, do more than simply show that there is some metaphysical doubt as to the material facts, but instead provide evidence that there is some genuine issue of material fact. *Id*. at 247-48. "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stanberry v. Air Wisc. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citing *Celotex*, 477 U.S. at 322–23).

**III.**

The Court concludes that Defendant is entitled to summary judgment because Plaintiff has failed to adduce sufficient evidence upon which a reasonable juror could conclude that Defendant breached its duty of ordinary care to Plaintiff. Under Ohio law, in order to prevail on a negligence claim, "the plaintiff must show (1) the existence of a duty, (2) a breach of that duty, and (3) an injury resulting from the breach." *Robinson v. Bates*, 112 Ohio St.3d 17, 24 (2006) (citing *Menifee v. Ohio Welding Prods, Inc.*, 15 Ohio St.3d 75, 77 (1984)). As set forth above, the parties dispute whether genuine issues of fact preclude summary judgment with regards to both the duty and breach elements. The Court considers the parties' arguments with regards to these elements in turn.

**A.   Duty**

Generally, "[a] shopkeeper owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharm., Inc.*, 18 Ohio St.3d 203, 203 (1985) (citation omitted). Ohio, however, employs the "open-and-obvious doctrine," "which states that a premises-owner owes no duty to persons entering those premises regarding dangers that are open and obvious." *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 80 (2003) (citation omitted). The *Armstrong* Court identified the rationale behind this doctrine as follows:

> The rationale underlying this doctrine is "that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves."

*Id*. at 80 (quoting *Simmers v. Bentley Constr. Co*., 64 Ohio St.3d 642, 644 (1992)). Thus, "[w]hen applicable . . . the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." *Id*. In other terms, "[b]usiness invitees are expected 'to

take reasonable precautions to avoid dangers that are patent or obvious." *Haynes v. Cincinnati Wal-Mart Supercenter Store No. 3656*, No. 1:12-cv-722, 2014 WL 1909483, at *2 (S.D. Ohio May 13, 2014) (quoting *Brinkman v. Ross*, 68 Ohio St.3d 82, 84 (1993) (other citations omitted)).

Here, the parties dispute whether the berries on the floor were an open and obvious hazard. Defendant relies upon Plaintiff's testimony that after she fell she was able to look down and see the berries to conclude that the berries were open and obvious. Defendant points out that Plaintiff's mother also testified that she was able to see the berries after Plaintiff's fall. According to Defendant, "the only reason [Plaintiff] did not see the blackberries before she fell is because she was not looking down." (Def.'s Mot. for Summ. J. 8, ECF No. 20.) Defendant also argues that Plaintiff's testimony that she was "covered in berries" and that they were on her pant leg after the fall also makes clear that the hazard the berries created was open and obvious. (*Id.* at 10.) Defendant further posits that the photos show that the blackberries were visible.

Plaintiff counters that viewing the facts in a light most favorable to her, a reasonable juror could conclude that the hazard the berries created was not open and obvious because neither Plaintiff nor her mother noticed the berries. Plaintiff also points out that both she and her mother testified that they did not believe someone would have noticed the berries even if they were looking down. Plaintiff further emphasizes her and her mother's testimony that the cement floor, like the berries, was dark and that the berries were located next to a dark rug that is also nearly the same color as the berries. Finally, Plaintiff points out that Ohio law does not require her to constantly look down.

The Court finds that viewing the facts in the light most favorable to Plaintiff, a reasonable juror could conclude that the hazard created by the berries was not open and obvious. Plaintiff

correctly points out that "the law does not require [customers of a store] to 'look constantly downward'" when walking through a store. *Mohn v. Wal-Mart Stores, Inc.,* No. 6-08-12, 2008 WL 5053445, at *4 (Ohio App. 3d Dist. Dec. 1, 2008) (quoting *Grossnickle v. Germantown*, 3 Ohio St.2d 96, syll. ¶ 2 (1965)); *cf. Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680-81 (1998) ("[A] pedestrian using a public sidewalk is under a duty to use care reasonably proportioned to the danger likely to be encountered but is not, as a matter of law, required to look constantly downward." (citation and internal quotation marks omitted)). Rather, customers are expected to exercise ordinary care. *Mohn,* 2008 WL 5053445, at *4. Nothing in the record suggests that Plaintiff and her mother were distracted or otherwise not exercising ordinary care as they walked through the store. The deposition testimony reflects that Plaintiff's mother had just walked through that area and had not noticed the berries on the floor. Indeed, neither Plaintiff nor her mother saw the berries until after Plaintiff fell, when they looked to see what she had slipped on and saw that the dark-colored berries had discolored Plaintiff's pants.

Although whether Plaintiff or her mother was aware of the hazard prior to Plaintiff's fall is not dispositive, significantly, both testified that they did not believe they would have seen the berries in that area even if they had been looking down due to the color of the berries, the color of the floor, and the proximity of the berries to the dark-colored rug. As Plaintiff explained in her deposition, "the floor . . . was dark, and then the rug was dark, and [the berries] were dark." (S. Elson Dep. 33, ECF No. 19-1.) In slip and fall cases, Ohio courts analyzing whether a hazard is open and obvious routinely consider whether the hazard blends in with the surroundings given its location and color. *See, e.g., Middleton v. Meijer, Inc.*, 2010 Ohio 3244, ¶¶ 2, 17 (Ohio App. 2nd Dit. 2010) (finding question of fact precluded summary judgment regarding the open and obvious nature of "ten feet long" puddle of laundry detergent that "got all over [the plaintiff's]

7

clothes after the fall where the floor was light colored and the liquid was clear); *Heckman v. Mayfield Country Club*, 2007 Ohio 5330, ¶ 12 (Ohio App. 8th Dist. 2007) (finding question of fact precluded summary judgment regarding the open and obvious nature of doorway's "raised threshold," noting that threshold was "the same color as the wooden door"); *Cintron-Colon v. Save-A-Lot*, 2014 Ohio 4574, ¶¶ 12-14 (Ohio App. 8th Dist. 2014) (holding that the bright yellow liquid on the white floor in the store would have been observable to a reasonable person and was therefore open and obvious as a matter of law); *Venneri v. Marc Glassman, Inc.*, 2013 Ohio 560 (Ohio App. 7th Dist. 2013) (finding that the long, green plant stem lying on a cream-colored floor in the store was an open and obvious hazard as a matter of law). Here, construing the evidence in the light most favorable to Plaintiff, a reasonable juror could conclude that the dark berries would not be readily observable to a customer exercising ordinary care given Plaintiff and her mother's testimony that the berries blended in with the dark floor and adjacent carpet. The Court therefore declines to grant summary judgment to Defendant on the grounds that it did not owe a duty to Plaintiff.

In reaching this conclusion, the Court acknowledges that the photographs Defendant attached to its Motion for Summary Judgment could, if accompanied by proper explanatory testimony, lead to a different result. The problem with the attached photos is that the portion of cement floor at issue, where the berries on which Plaintiff slipped are located, shows up in the photos as a light-colored stripe on an otherwise very dark floor. The white stripe, against which the dark berries appear prominent, appears to be attributable to either the glare from the flash of the camera or the overhead lighting. Thus, although the berries and the smear marks are readily observable against the backdrop of what appears to be a white stripe in the otherwise dark floor, because both Plaintiff and her mother testified that the floor where the berries were located was

8

dark as is shown in the farther edges in the photograph, the Court declines to reach a different conclusion based upon the photographs.

**B.     Breach**

In order to show that a shopkeeper breached its duty of ordinary care in a slip-and-fall negligence action, a plaintiff must establish (1) that the shopkeeper, acting "through its officers and employees was responsible for the hazard complained"; (2) that the shopkeeper or officers or employees "'had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly'"; or (3) that the hazard "'existed for a sufficient length of time'" to justify the conclusion that the shopkeeper was on constructive notice such that "'the failure to warn against it or remove it was attributable to want of ordinary care.'" *Sharp v. Andersons, Inc.*, 2006 Ohio 4075, ¶ 9 (Ohio App. 10th Dist. 2006) (quoting *Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 589 (1943)).

In this case, Plaintiff does not assert that Defendant created or had actual knowledge of the hazard created by the berries on the floor. Instead, Plaintiff maintains that Defendant should have known that the berries were on the floor before she fell. Citing her testimony that it was a slow night and that there were no Wal-Mart employees in the immediate vicinity when she fell, as well as the presence of the "smudge and tracks through the berries," Plaintiff submits that "a reasonable jury could conclude that a Wal-Mart employee had not recently inspected the floor." (Pl.'s Mem. in Opp. 7-8, ECF No. 34.)

In cases like this one, which involve a constructive notice theory of liability, "Ohio courts 'ha[ve] consistently followed *Anaple* [*v. Standard Oil Co*., 162 Ohio St. 537, 124 N.E.2d 128 (Ohio 1955),] and held that evidence of how long the hazard existed is mandatory in establishing a duty to exercise ordinary care.'" *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 477 (6th

9

Cir. 2010) (quoting *Combs v. First Nat'l Supermarkets, Inc.,* 105 Ohio App.3d 27, 30 (1995)). "Without such evidence, it is impossible to determine whether the premises owner should have discovered the hazard upon a reasonable inspection." *Ray v. Wal-Mart Stores, Inc.*, 2013 Ohio 2684, ¶ 47 (Ohio App. 4th Dist. 2013) (citation omitted). "Thus, Ohio appellate courts have routinely affirmed summary judgments or directed verdicts in favor of defendants where the plaintiff fails to produce evidence of how the produce came to be on the floor and how long it had been there before the plaintiff's fall." *Sharp*, 2006 Ohio 4075, at ¶ 13 (citations omitted).

In this case, as Defendant points out, Plaintiff has failed to offer any evidence reflecting who caused the berries to be on the floor, how long the berries were on the floor, or that any Wal-Mart employee knew of the presence of the berries on the floor and failed to clean them up. Rather, in her deposition, Plaintiff specifically denies having any such knowledge. Plaintiff's mother similarly denies having any such knowledge and indicates that she had only been in that department for three minutes before Plaintiff fell. Plaintiff's attempt to create a question of fact by relying on the "smudge and tracks through the berries" is unavailing. Certainly, Plaintiff may offer circumstantial evidence. *Brymer v. Giant Eagle, Inc*., 2011 Ohio 4022, ¶ 20 (Ohio App. 11th Dist. 2011) ("[C]onstructive notice requires proof by direct or circumstantial evidence . . . ." (internal quotation marks and citations omitted)). But Plaintiff's reliance on the "smudge and tracks" fails to satisfy her burden for two reasons. First, review of Plaintiff and her mother's testimony reflects that neither of them were sure whether the "squish marks" in the photos were from Plaintiff or someone else. (*See* S. Elson Dep. 39-40, ECF No. 19-1; F. Elson Dep. 21-22, ECF No. 19-2.) Second, even assuming others had walked through them, the record contains no evidence reflecting how long before Plaintiff's fall that occurred.

In sum, because Plaintiff has failed to produce evidence showing how the berries came to be on the floor or how long the berries had been on the floor before she fell, Defendant is entitled to summary judgment in its favor.

## IV.

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED**.  (ECF No. 20)  The Clerk is therefore **DIRECTED** to enter judgment in favor of Defendant and to terminate this case from the Court's pending cases list.

**IT IS SO ORDERED.**

Date: April 28, 2017                                    /s/ *Elizabeth A. Preston Deavers*
                                                                ELIZABETH A. PRESTON DEAVERS
                                                                UNITED STATES MAGISTRATE JUDGE